UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| PATRICIA WEGNER, individually | § | |
| and on behalf of the ESTATE OF | § | |
| TROY WEGNER | § | |
| | § | |
| v. | § | CIVIL NO. 4:20-CV-608-SDJ |
| | § | |
| TETRA PAK, INC., ET AL. | § | |

## MEMORANDUM OPINION AND ORDER

This case involves a claim for payment of supplemental life insurance benefits under an insurance policy governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"). During his employment with Defendant Tetra Pak, Inc., Troy Wegner elected a group supplemental term life insurance plan (the "Plan"), which was supplied by Defendant Hartford Life & Accident Insurance Company to Tetra Pak under policy number GL-681363 (the "Policy"). Wegner named his wife, Patricia Wegner ("Mrs. Wegner"), as his sole beneficiary under the Policy.

After Troy Wegner passed away from acute myeloid leukemia, Hartford paid Mrs. Wegner $170,000 as the beneficiary of Troy Wegner's supplemental life insurance. Asserting that she is owed an additional $30,000 in benefits under the Policy, Mrs. Wegner brought this suit against Hartford and Tetra Pak.[1]

---

[1] There are discrepancies regarding the amount Mrs. Wegner claims she is entitled to receive. In the operative complaint, she alleges that Troy Wegner elected $350,000 in coverage. (Dkt. #12 at 4). In her brief in support of her appeal, she alleges that Troy Wegner elected $200,000 in coverage but was actually entitled to $220,000 in coverage because the $77 deductions from his twice-monthly paycheck entitled him to the higher amount based on her understanding of Defendants' premium calculator. (Dkt. #43 at 7). In Hartford's response, it argued that Mrs. Wegner miscalculated the $220,000 figure based on a bi-

In addition to her denial-of-benefits claim, Mrs. Wegner also brings claims against Hartford and Tetra Pak for failure to follow claims procedure and provide Plan documents under ERISA, along with additional alleged statutory violations. Because the Court concludes that Mrs. Wegner is not eligible for the additional benefits she seeks and that her remaining claims are likewise without merit, the Court will uphold the denial of additional benefits and dismiss Mrs. Wegner's claims against Defendants.

## I. STANDARDS OF REVIEW

The parties agree that de novo review applies in this case.[2] The Court's responsibility in conducting de novo review is to "determine whether the

---

monthly (twenty-four pay periods per year) versus bi-weekly (twenty-six pay periods per year) misunderstanding. (Dkt. #48 at 8–9).

Regardless, it is clear that Troy Wegner elected $200,000 in supplemental life insurance benefits. *See infra* Part II(A). The Court therefore continues with its analysis with the understanding that Mrs. Wegner is claiming entitlement to an additional $30,000 in benefits: the difference between the $200,000 elected and the $170,000 paid. Even if Mrs. Wegner had adequately or clearly claimed entitlement to either of the higher amounts, the Court's conclusions would apply equally.

[2] Hartford, as the claims administrator responsible for determining benefits under the Plan, *see infra* Part III(A), has stipulated to de novo review, and Tetra Pak agrees. (Dkt. #31); (Dkt. #47 at 6).

The standard of judicial review afforded to ERISA benefits determinations depends on whether the policy vests the plan administrator with discretionary authority. *Ariana M. v. Humana Health Plan of Tex., Inc.*, 884 F.3d 246, 247 (5th Cir. 2018) (en banc) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). If a plan does not lawfully delegate discretionary authority, a denial of benefits is reviewed de novo. *Id.* at 247, 256 (holding that de novo review applies to nondiscretionary benefits denials based on both legal interpretations of ERISA policies and factual determinations). This standard "means the default is that the administrator has no discretion, and the administrator has to show that the plan gives it discretionary authority in order to get any judicial deference to its decision." *Pike v. Hartford Life & Accident Ins. Co.*, 368 F.Supp.3d 1018, 1024 n.2 (E.D. Tex. 2019) (quoting *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1089 (9th Cir. 1999)).

administrator made a correct decision." *Pike*, 368 F.Supp.3d at 1030 (quoting *Niles v. Am. Airlines*, 269 F.App'x 827, 832 (10th Cir. 2008)); *see also Batchelor v. Life Ins. Co. of N. Am.*, 504 F.Supp.3d 607, 609–10 (S.D. Tex. 2020). The Court must "independently weigh the facts and opinions in the administrative record to determine whether the claimant has met [her] burden of showing" that she is entitled to benefits "within the meaning of the policy." *Pike*, 368 F.Supp.3d at 1030 (quoting *Richards v. Hewlett-Packard Corp.*, 592 F.3d 232, 239 (1st Cir. 2010)). It must also resolve questions of fact and weigh the evidence. *Revels v. Standard Ins. Co.*, 504 F.Supp.3d 556, 560 (N.D. Tex. 2020) (citation omitted). "*De novo* review requires that the court apply the same standard as the plan administrator in deciding whether the benefits were owed under the plan's terms.*" Ariana M. v. Humana Health Plan of Tex., Inc.*, No. CV H-14-3206, 2018 WL 4384162, at *12 (S.D. Tex. Sept. 14, 2018), *aff'd*, 792 F.App'x 287 (5th Cir. 2019).

Hartford and Tetra Pak seek judgment as a matter of law under Federal Rule of Civil Procedure 52. (Dkt. #47 at 4, 6–7); (Dkt. #48 at 2). Rule 52 provides that in

---

The Policy includes a clause granting Hartford discretion to determine benefits eligibility and interpret the Policy's terms and provisions, to the extent permitted by applicable state law. ((Dkt. #40 at 48). Several state legislatures have, over the last several years, enacted statutes that "either prohibit outright the use of discretionary clauses in insurance contracts or impose limitations on the content and format of these clauses." *Pike*, 368 F.Supp.3d at 1024 n.2 (citation omitted). Texas is among those states. *See* TEX. INS. CODE § 1701.062(a). Because Hartford has stipulated to de novo review, the Court need not determine whether the discretionary clause in the Policy is valid and reviews the benefits denial in this case de novo. *See Pike*, 368 F.Supp.3d at 1024 (conducting de novo review where the parties stipulated to this standard); *Chavez v. Standard Ins. Co.*, No. 3:18-CV-2013-N, 2019 WL 1767000, at *2 (N.D. Tex. Apr. 22, 2019) (same).

"an action tried on the facts without a jury . . . the court must find the facts specially and state its conclusions of law separately." FED. R. CIV. P. 52(a)(1).

The Court previously determined that no trial would be set in this matter, as it is to be handled as an appeal of Defendants' benefits determination. *See* (Dkt. #26 at 2); *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011) ("[O]ur review of an ERISA benefits determination is essentially analogous to a review of an administrative agency decision . . . ."). This action is therefore before the Court on the administrative record developed below, the parties' briefs, and oral argument.[3]

In the Fifth Circuit, "Rule 52(a) does not require that the district court set out [its] findings on all factual questions that arise in a case." *Koenig v. Aetna Life Ins. Co.*, No. 4:13-CV-359, 2015 WL 6554347, at *3 (S.D. Tex. Oct. 29, 2015) (quoting *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1054 (5th Cir. 1997)). The rule is satisfied where the findings present the reviewer with "a clear understanding of the basis for the decision." *Century Marine Inc. v. United States*, 153 F.3d 225, 231 (5th Cir. 1998) (citation omitted). In accordance with Rule 52(a), this Memorandum Opinion and Order provides the Court's findings of fact, followed by its conclusions of law.[4]

---

[3] The Court will refer to the administrative record as A.R., followed by the corresponding page number. The full administrative record is docketed at (Dkt. #40).

[4] Any findings of fact that are more properly considered as conclusions of law are adopted by the Court as such, and vice versa.

## II. FINDINGS OF FACT

### A. Troy Wegner's Employment and Supplemental Life Insurance Election

Troy Wegner worked for Tetra Pak as a shop lead from 2011 until he passed away. (A.R. 219). He left work in October of 2018 and began receiving short term disability benefits following a diagnosis of acute myeloid leukemia. In November 2018, he elected $200,000 in supplemental life insurance benefits under the Policy. This election amount is undisputed. He also designated Mrs. Wegner as his beneficiary under the Policy. The coverage was set to take effect on January 1, 2019. (A.R. 242). After returning to work sporadically in 2019, Troy Wegner died on July 2, 2019.

### B. The Policy, Guaranteed Issue Amount, and EOI

The Policy provides for supplemental life insurance with a "Guaranteed Issue Amount" of "[t]he amount You elect in increments of $10,000, subject to the lesser of $250,000 or 3 times Your annual Earnings." (A.R. 30). The record shows that Troy Wegner's annualized pay in 2019 was $57,636.80. (A.R. 60–61, 204–08). His annualized earnings, $57,636.80, multiplied by three, yields a total of $172,910.40, which, rounded to the nearest $10,000 increment, is $170,000. *See* (A.R. 60–61). The Court therefore finds that Troy Wegner's Guaranteed Issue Amount under the Policy was $170,000.

The Policy further states that Hartford requires an insured to provide Evidence of Insurability ("EOI") if the insured enrolls for an amount of life insurance greater than the Guaranteed Issue Amount. (A.R. 32). EOI "must be satisfactory to [Hartford]" and may include a medical exam or an attending physician's statement,

among other items. (A.R. 32). If EOI is not satisfactory to Hartford, the insured's amount of life insurance will "equal the amount for which [the insured was] eligible without providing [EOI]"—that is, the Guaranteed Issue Amount. (A.R. 32). Because Troy Wegner elected $200,000 in supplemental life insurance benefits, which was greater than his Guaranteed Issue Amount of $170,000, the Court finds that Troy Wegner was required to submit EOI to be eligible for the higher coverage amount under the Policy.

The record includes no evidence that Troy Wegner submitted EOI. Defendants assert that he failed to submit the required EOI, and as a result, his life insurance benefits were limited to the Guaranteed Issue Amount of $170,000. Mrs. Wegner, however, disputes that her husband was adequately notified—or notified at all—of the requirement to submit EOI. She asserts that the evidence Defendants have provided to show that Troy Wegner was notified of the requirement to submit EOI is insufficient to prove that he was the recipient of such notices.

The Court notes, however, that in addition to the language of the Policy itself, which plainly notified Troy Wegner of the need for EOI, Defendants also use an online program called Benefits Solver to administer the Plan. Troy Wegner's online Benefits Solver account includes a "Benefits Summary," which specifically states that his $200,000 supplemental life insurance election was "[p]ending EOI." (A.R. 235–39). The Court finds that the record shows Troy Wegner was notified of the requirement to submit EOI, and that he failed to do so.[5] *See* (A.R. 235–39) (showing that, as to the

---

[5] The Court notes that, with its briefing, Hartford also submitted the Declaration of Robert Gabriele concerning certain emails allegedly sent to Troy Wegner notifying him that

submission of EOI, Troy Wegner was in a "[p]ending EOI" status on his Benefits Summary); (A.R. 242–43) (confirming Troy Wegner's status regarding EOI on Benefits Solver as "Pending Proof of Insurability").

## C. Mrs. Wegner's Benefits Claim, Hartford's Initial Denials, Administrative Review, and Hartford's Payment of Benefits

Following Troy Wegner's passing, Mrs. Wegner applied for payment of his supplemental life insurance benefits. On August 7, 2019, Hartford sent Mrs. Wegner a letter denying all supplemental benefits based on the Policy's "Deferred Effective Provision," which states that if the insured is not "Actively at Work" on the effective date of the coverage, January 1, 2019, the coverage will not become effective until the insured is "Actively at Work." (A.R. 109–12). This denial was based on Tetra Pak's erroneous reporting to Hartford that Troy Wegner's last day physically at work was October 4, 2018. (A.R. 109–12). On August 30, 2019, Hartford upheld its erroneous denial of benefits for the reasons provided in the August 7 denial in a second letter. (A.R. 180).

However, following the initial denial, Tetra Pak's representative realized that its determination that Troy Wegner was last physically at work on October 4, 2018, was erroneous, as he returned to the office in early 2019 for a period of time. Tetra Pak's representative informed Hartford of this error and requested that Hartford re-process the claim. (A.R. 84).

---

he "ha[d] not yet completed [his] Personal Health Application," as relevant to EOI. (Dkt. #48–2). Mrs. Wegner has argued that the Court should not consider the Gabriele Declaration because it is not "authenticated." To the extent Mrs. Wegner has asserted an objection to the Gabriele Declaration, such objection is overruled as moot. The Court has considered neither the Gabriele Declaration nor the emails referenced therein to reach its decision in this case.

Upon review, Hartford determined that Mrs. Wegner was entitled to Troy Wegner's supplemental life insurance benefits in the amount of $170,000, his Guaranteed Issue Amount. (A.R. 60). On September 16, 2019, two months after Mrs. Wegner's initial request, Hartford approved and paid out $170,000 in benefits. There is no dispute that Hartford paid and Mrs. Wegner received the $170,000.

The record also shows that Tetra Pak had been withholding from Troy Wegner's paychecks premiums that corresponded to the full $200,000 in coverage. It is undisputed that Mrs. Wegner was refunded the premium amount that Troy Wegner paid above the cost for coverage of $170,000.

On October 18, 2019, Mrs. Wegner's lawyer sent a letter to Hartford informing Hartford that Mrs. Wegner intended to pursue "full payment" based on Troy Wegner's election of higher benefits. (A.R. 114). On October 21, 2019, Hartford's representative called Mrs. Wegner's counsel and explained why she was not entitled to additional benefits. (A.R. 56).

## D. Mrs. Wegner's Request for Troy Wegner's Original Application

After Hartford informed Mrs. Wegner that the claim had been approved for $170,000 in benefits, Mrs. Wegner requested a copy of the claim documents, including her husband's original "application" for supplemental coverage. (A.R. 56, 59). Tetra Pak's representative informed Mrs. Wegner that the "enrollment period in November is 100% online through [the] Benefits portal" and offered a copy of the system election showing that Troy Wegner selected his coverage. (A.R. 58). Mrs. Wegner asserts that "[t]o date, neither Hartford or Tetra-Pak [sic] have provided Plaintiff with a copy of the application." (Dkt. #43 at 10–11).

8

Tetra Pak asserts that no application ever existed, and the record of what Troy Wegner elected in coverage is reflected in his online Benefits Summary. The Benefits Summary specifically states that his supplemental life insurance elected amount was $200,000, which was "[p]ending EOI," and that the actual coverage was $170,000. (A.R. 237).[6] Based on the record, the Court finds that no paper application ever existed and that the online Benefits Summary constitutes the record of Troy Wegner's supplemental life insurance election.

### III. CONCLUSIONS OF LAW

Mrs. Wegner brings claims for wrongful denial of benefits against Hartford and Tetra Pak pursuant to ERISA Section 502(a)(1)(B). In support of her claims, she alleges that because her husband elected $200,000 in life insurance benefits, she is entitled to the additional $30,000 he elected. She further asserts that she is entitled to the additional funds because her husband paid premiums for $200,000 in coverage.

Mrs. Wegner also brings claims against Hartford and Tetra Pak for failure to follow claims procedure in violation of ERISA Section 503, failure to provide information in violation of Section 104(b)(4), breach of fiduciary duty in violation of Section 502(a)(2), "knowing participation" in violation of Section 502(a)(3), and for attorney's fees. The Court now provides its conclusions as to each of Mrs. Wegner's claims.

---

[6] Hartford clarified that the Benefits Summary stated Troy Wegner's actual coverage was $172,911 where it should have stated $170,000. (Dkt. #48 at 5 n.1 (citing (A.R. 242–44))).

## A. Alleged Wrongful Denial of Benefits in Violation of ERISA Section 502(a)(1)(B)

Mrs. Wegner asserts that Tetra Pak and Hartford violated ERISA Section 502(a)(1)(B) by: wrongly denying the additional $30,000 she asserts she is owed; failing adequately to inform Troy Wegner of the need to submit EOI; and by initially denying her claims in full on August 7 and August 30, 2019.

ERISA Section 502(a)(1)(B) "provides a private right of action for persons alleging entitlement to benefits, or seeking to enforce or clarify rights, pursuant to the terms of an ERISA plan." *Perdue v. Burger King Corp.*, 7 F.3d 1251, 1254 (5th Cir. 1993) (citing 29 U.S.C. § 1132(a)(1)(B)). Pursuant to this section, a "participant or beneficiary" may bring such an action. 29 U.S.C. § 1132(a)(1)(B). A claimant under this section "has the initial burden of demonstrating entitlement to benefits under an ERISA plan." *Perdue*, 7 F.3d at 1254, n.9 (citations omitted).

### i. Section 502(a)(1)(B) claim against Tetra Pak

Tetra Pak contends that Mrs. Wegner cannot properly bring a Section 502(a)(1)(B) claim against it because Tetra Pak has no obligation to pay or authority to determine benefits under the Policy. The Court agrees. The Fifth Circuit has held that an employer is not a proper defendant for a denial-of-benefits claim where the instrument governing the ERISA plan gives another entity the final authority to make benefits determinations. *Armando v. AT&T Mobility*, 487 F.App'x 877, 879 (5th Cir. 2012) (per curiam). Here, the Policy specifically states that "[t]he Plan has designated and named [Hartford] as the claims fiduciary for benefits provided under the Policy," and further states that Hartford has the full authority to determine

eligibility for benefits under the Policy. (A.R. 48). Therefore, as the claims administrator, Hartford had the final authority to make benefits determinations. Mrs. Wegner's claim under 502(a)(1)(B) is not properly asserted against Tetra Pak. *See Armando*, 487 F.App'x at 879 (concluding that where another entity has the final authority to make benefits determinations, an employer is not liable just because it requests review of a benefit denial); *cf. Musmeci v. Schwegmann Giant Super Markets, Inc.*, 332 F.3d 339, 349 (5th Cir. 2003) ("[P]lan beneficiaries can sue the employer when it was the employer's decision to deny benefits."). This claim is therefore dismissed as to Tetra Pak.

### ii. Section 502(a)(1)(B) claim against Hartford

As to Mrs. Wegner's Section 502(a)(1)(B) claim against Hartford, she must establish that she is entitled to the additional benefits she seeks. She has not met this burden and therefore the claim fails.

Because the Court has found that (1) Troy Wegner was required to submit EOI in order to be eligible for $200,000 in supplemental life insurance benefits, (2) he failed to submit EOI, and (3) he was therefore entitled only to the $170,000 Guaranteed Issue Amount, the Court concludes that Mrs. Wegner has failed to meet her burden to show that she is entitled to the additional benefits she seeks.

Mrs. Wegner's argument that Defendants failed adequately to inform Troy Wegner of the need to submit EOI is unavailing, given that the Policy explicitly states that an insured must provide EOI if the insured enrolls for an amount of life insurance greater than the Guaranteed Issue Amount, and that Troy Wegner's online

Benefits Summary shows that the insurance election of $200,000 remained in a "pending EOI" status at the time Mr. Wegner died.

Mrs. Wegner's assertion that she is entitled to the additional $30,000 in benefits because her husband paid premiums for that level of coverage also misses the mark. She has cited no authority to support the argument that the payment of premiums on a policy, the terms of which do not provide coverage, can otherwise create coverage. And "[i]n numerous cases, courts have upheld the denial of benefits under a policy despite the defendants' acceptance of premiums for that policy" and concluded that the only available remedy is the refund of the overpaid premiums. *Khan v. Am. Int'l Grp., Inc.*, 654 F.Supp.2d 617, 630–31 (S.D. Tex. 2009) (collecting cases); *see also Sanborn-Alder v. Cigna Grp. Ins.*, 771 F.Supp.2d 713, 728 (S.D. Tex. 2011) (noting that the "payment of premiums [did not] create coverage under the plan where coverage did not exist under the terms of the plan or the policy" (citation omitted)). The Court therefore concludes that Mrs. Wegner's only remedy for Troy Wegner's overpayment in premiums is a refund of the premiums, which has already occurred. *See Sanborn-Alder*, 771 F.Supp.2d at 728.

Lastly, because Hartford eventually paid benefits in accordance with the Policy, the initial erroneous denials of benefits, referenced repeatedly by Mrs. Wegner in her submissions, are not actionable under Section 502(a)(1)(B). In this regard, the Court affords no deference to Hartford's benefits determination on de novo review, so Hartford's "compliance with the procedural regulations of ERISA in handling Plaintiff's claim is irrelevant" in the context of Section 502(a)(1)(B) claims. *Revels*,

504 F.Supp.3d at 568; *see also Lafleur v. La. Health Serv. & Indem. Co.*, 563 F.3d 148, 157 (5th Cir. 2009) (discussing procedural unreasonableness in the context of an abuse of discretion standard and explaining that a failure to comply with ERISA's procedural requirements does not generally give rise to a substantive remedy); *Chavez*, 2019 WL 1767000, at *2 (concluding that discovery regarding procedural unreasonableness was irrelevant in a de novo review case because "[p]rocedural unreasonableness and conflict of interest discovery are [only] relevant in cases where the court applies an abuse of discretion standard of review because it can affect a district court's deference analysis.").

For a denial of benefits claim, the Court's inquiry turns on the question whether the claimant has established that she is entitled to the benefits she seeks. Here, the record demonstrates that Mrs. Wegner was entitled to $170,000 in benefits, which she was paid after the initial denials were resolved in the administrative review process. Accordingly, Mrs. Wegner's claim under Section 502(a)(1)(B) is without merit and must be dismissed.

## B. Alleged Failure to Follow Claims Procedure in Violation of ERISA Section 503

Mrs. Wegner further alleges that Defendants failed to follow claims procedure, in violation of Section 503, several times: in the initial denials, which allegedly did not adequately notify Mrs. Wegner of the denial; Defendants' alleged failure to provide evidence to support the denial of benefits in excess of $170,000; Defendants' alleged failure to honor the premiums Troy Wegner paid; and Defendants' alleged failure to provide Mrs. Wegner with the original enrollment application. According to

Mrs. Wegner, these alleged failures denied her the full and fair review ERISA requires.

Section 503 requires every employee benefit plan to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant" and "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133.[7]

---

[7] Hartford argues that it is not a proper defendant for a Section 503 claim because the statutory provision speaks to procedures that the "employee benefit plan" shall follow, and Hartford is the claims administrator and insurer, "not the Plan, Plan Sponsor, or Plan Administrator." (Dkt. #48 at 13).

There is support for Hartford's argument. *See Omega Hosp., LLC v. United Healthcare Servs., Inc.*, 345 F.Supp.3d 712, 741 (M.D. La. 2018) ("Within the Fifth Circuit, district courts have found that the ERISA Plan, itself, is the only proper defendant in a Section 503 claim."). However, Section 503 also states that its purpose is to provide for a full and fair review of a denial of benefits "by the appropriate *named fiduciary of the decision denying the claim*." 29 U.S.C. 1133 (emphasis added); *see also* 29 U.S.C. § 1102(a)(2) ("the term 'named fiduciary' means a fiduciary who is named in the plan instrument . . . ."). Here, *see supra* Part III(A), the Plan designated Hartford as the "claims fiduciary" and gives Hartford the authority to determine benefit eligibility under the Policy. (A.R. 48). Hartford therefore appears to be a "named fiduciary of the decision denying the claim." *See also Rossi v. Precision Drilling Oilfield Servs. Corp. Emp. Benefits Plan*, 704 F.3d 362, 366 (5th Cir. 2013) ("To comply with the full and fair review requirement in deciding benefit claims under ERISA, a *claim* administrator must provide the specific grounds for its benefit claim denial." (emphasis added) (quotation omitted)).

Moreover, Hartford sent Mrs. Wegner the two initial benefits denial letters, the eventual approval, and the claim file. And it was Hartford's representative who called Mrs. Wegner's counsel, after receiving counsel's letter, to explain why the benefits were capped at $170,000. These facts all suggest that Hartford is a proper defendant for Mrs. Wegner's Section 503 claim. However, because the claim fails regardless, the Court need not reach a conclusion on this question.

Administrators must "substantially comply" with ERISA procedures, and courts excuse "technical non-compliance" if the purposes of Section 503 are fulfilled. *Bunner v. Dearborn Nat'l Life Ins. Co.*, 37 F.4th 267, 272 (5th Cir. 2022). Its purposes include "promoting resolution of the dispute at the administrative level and facilitating a meaningful dialogue between the plan administrator and the beneficiary." *Id.* This "substantial compliance test" considers "all communications" between an administrator and a beneficiary to "determine whether the information provided was sufficient under the circumstances." *Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan*, 493 F.3d 533, 539 (5th Cir. 2007) (quotation omitted), *abrogated on other grounds by Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010). "All communications may include oral communications." *Id.* (quotation omitted).

As to the initial denials of Mrs. Wegner's benefits claims, compliance "*at each and every level* of review" of internal claim processing is not required, as the "end goal of judicial intervention in ERISA is not to correct problems at every level of plan administration, but to encourage resolution of the dispute at the administrator's level before judicial review." *Id.* at 540. Even so, Hartford provided notice, in writing, regarding the reasons for initially denying the claims—namely, that Troy Wegner was reported as not Actively at Work after the effective date of the Policy—in a manner that Mrs. Wegner could and clearly did understand. *See* (A.R. 108–12). The denials further afforded her an opportunity for a full review of the denial, which is

evident from the eventual approval of her claim. The initial denials thus substantially complied with Section 503.

Section 503 addresses the procedure that administrators must follow in denying a claim for benefits, specifically regarding notification of the claimant concerning the denial and allowing for review. Mrs. Wegner's complaints as to Defendants' alleged failure to honor premium calculations and failure to provide the original enrollment application therefore are not properly asserted under Section 503, because they do not pertain to the procedures Defendants followed in notifying her of the denial of benefits or review.

Finally, Mrs. Wegner claims that Defendants' denial of benefits in excess of the $170,000 they eventually approved violated Section 503. Following the review and resolution of the initial erroneous denials, Hartford approved the $170,000 in benefits and mailed Mrs. Wegner copies of her claim documents. *See* (A.R. 56, 60). Mrs. Wegner's lawyer then sent a letter to Hartford informing Hartford that Mrs. Wegner intended to pursue "full payment" based on Troy Wegner's election of higher benefits. (A.R. 114). Defendants point to an October 21, 2019, phone call from Hartford's representative to Mrs. Wegner's counsel as evidence of "a clear explanation of the reasoning for the decision" to not pay additional benefits. *See* (Dkt. #47 at 11 (citing (A.R. 56))).

To be sure, the October 21 phone call was not a written explanation, and the record does not appear to contain a written explanation specifically regarding the denial of benefits in excess of $170,000. The Hartford representative's call notes,

however, detail the explanation provided to Mrs. Wegner's counsel, including Troy Wegner's benefits elections, the Guaranteed Issue Amount, Hartford's calculation of benefits, and that Tetra Pak would need to refund any premiums paid for coverage above $170,000. (A.R. 56). The call notes further state that counsel "understands" and that the Hartford representative invited counsel to call back with any additional questions. (A.R. 56). This appears to be the end of the conversation regarding the denial of benefits in excess of $170,000 in the record.

The content of this phone call in response to Mrs. Wegner's attorney's letter, taken together with Hartford's approval of the $170,000 in coverage and Hartford's sending Mrs. Wegner the claim documents at her request, facilitated a "meaningful dialogue," and, when taking all communications into account, demonstrate that the information provided regarding the denial of additional benefits was sufficient under the circumstances to inform Mrs. Wegner of the specific reasons that she was not entitled to additional benefits. The Court thus concludes that Defendants substantially complied with ERISA procedures, and no violation of Section 503 occurred.

Even if the Court were to conclude otherwise, "[f]ailure to fulfill procedural requirements generally does not give rise to a substantive damage remedy." *Wade*, 493 F.3d at 540 (quotation omitted). When the administrator fails to substantially comply with ERISA's procedural requirements, "[r]emand to the plan administrator for full and fair review is usually the appropriate remedy." *Rossi*, 704 F.3d at 368 (quoting *Lafleur* 563 F.3d at 157). Mrs. Wegner does not seek this equitable remedy—

she instead seeks benefits, penalties, and attorney's fees. Therefore, even if the Court concluded that Defendants violated Section 503, she would not be entitled to the relief she seeks. For these reasons, Mrs. Wegner's claim under Section 503 will be dismissed.

### C.  Hartford and Tetra Pak's Alleged Failure to Provide Information in Violation of ERISA Section 104(b)(4)

Mrs. Wegner asserts that Defendants' failure to provide Troy Wegner's original application for supplemental life insurance benefits is a violation of ERISA Section 104(b)(4) and entitles her to monetary penalties. Section 104(b)(4) requires that a plan administrator, upon written request by any participant or beneficiary, "furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4); *N. Cypress Med. Ctr. Operating Co. v. Aetna Life Ins. Co.*, 898 F.3d 461, 482–83 (5th Cir. 2018) (citation omitted). Certain penalties attach if the documents are not supplied within thirty days of the request. 29 U.S.C. § 1132(c).

Hartford argues that it is not the Plan Administrator and as such is not subject to this type of claim. The Court agrees. The Fifth Circuit has indicated that the insurer and/or the claim administrator do not fall within ERISA's definition of an "administrator" for purposes of Section 104(b)(4). *See N. Cypress Med. Ctr. Operating Co.*, 898 F.3d at 483 ("ERISA defines administrator as the person specifically so designated in the plan or the plan sponsor if no administrator is designated . . . . And the Fifth Circuit does not recognize a de facto administrator doctrine in the context

18

of an insurance company involved in claims handling." (cleaned up)). The Plan documents clearly identify Tetra Pak as the "Plan Sponsor" and "Plan Administrator." (A.R. 48). Mrs. Wegner's claim under Section 104(b)(4) is therefore dismissed as to Hartford.

As to the claim against Tetra Pak, the Court has found that the purported application Mrs. Wegner seeks does not exist, as the enrollment process occurred online and the online Benefits Summary serves as the record of the coverage Troy Wegner elected. But even if the application did exist, it would not fall under Section 104(b)(4)'s catchall provision. The only category of documents identified in Section 104(b)(4) that could potentially encompass such an application is "other instruments under which the plan is established or operated"—but it does not encompass such an application. The Fifth Circuit "agree[s] with the majority of the circuits which have construed Section 104(b)(4)'s catch-all provision narrowly so as to apply only to formal legal documents that govern a plan." *Murphy v. Verizon Commc'ns, Inc.*, 587 F.App'x 140, 144 (5th Cir. 2014). And as another district court in our circuit has concluded, Section 104(b)(4) "does not apply to documents generated during an application or claims process." *Lauga v. Applied Cleveland Holdings, Inc.*, No. CV 16-14022, 2018 WL 3495860, at *7 (E.D. La. July 20, 2018) (citing, among others, *Murphy*, 587 F.App'x at 144).

In sum, even if the application Mrs. Wegner seeks existed, the Court concludes that it would not be a formal legal document that would "establish" or "operate" the Plan. Mrs. Wegner's claim under Section 104(b)(4) as to Tetra Pak will be dismissed.

### D. Alleged Breaches of Fiduciary Duty in Violation of ERISA Section 502(a)(2)

Mrs. Wegner also claims that Tetra Pak and Hartford's actions constituted breaches of their fiduciary duties in violation of Section 502(a)(2). Hartford and Tetra Pak correctly respond that Mrs. Wegner has no right to recovery under Section 502(a)(2) as an individual.

ERISA Section 502(a)(2) provides that the Secretary of Labor, a participant, a beneficiary, or fiduciary may bring a civil action for appropriate relief under Section 409. 29 U.S.C. § 1132(a)(2). Section 409 states in turn that a plan fiduciary "who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries . . . shall be personally liable to make good to *such plan* any losses to the plan resulting from each such breach . . . ." 29 U.S.C. § 1109(a) (emphasis added).

Mrs. Wegner therefore may not sue in her individual capacity for personal damages under Section 502(a)(2), as the only remedy under Section 409 is to the Plan. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) (concluding that recovery for a violation of Section 409 "inures to the benefit of the plan as a whole"); *Matassarin v. Lynch*, 174 F.3d 549, 566 (5th Cir. 1999) (upholding district court's grant of summary judgment of a Section 502(a)(2) claim for individual recovery because Section 409 "limits claims to those that inure to the benefit of the plan as a whole and not to the benefit only of individual plan beneficiaries"); *Blum v. Spectrum Rest. Grp.-Emps. Grp. Life & Supplemental Life Plan*, No. 4:02-CV-92, 2003 WL 302218, at *2 (E.D. Tex. Feb. 10, 2003) ("[S]ection 502(a)(2) authorizes recovery by a plan only, not recovery by an individual." (citing

*Mass. Mut.*, 473 U.S. at 140–44)). Mrs. Wegner's claims under Section 502(a)(2) therefore must be dismissed.

### E.  Alleged Violation of ERISA Section 502(a)(3)

Mrs. Wegner also claims Hartford and Tetra Pak violated Section 502(a)(3), apparently premised on each Defendant's alleged knowing participation in the other's breach of fiduciary duty. (Dkt. #12 ¶¶ 8.01–8.09); (Dkt. #43 at 12–13).

Section 502(a)(3) allows a participant, beneficiary, or fiduciary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). The Supreme Court has construed Section 502(a)(3) as a "catchall remedial section" that "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996).

The Fifth Circuit has determined, in turn, that "a claimant whose *injury* creates a cause of action under ERISA § 502(a)(1)(B) may not proceed with a claim under ERISA § 502(a)(3)." *Manuel v. Turner Indus. Grp., L.L.C.*, 905 F.3d 859, 865, 867 (5th Cir. 2018) (cleaned up) (upholding dismissal of Section 502(a)(3) claims that attacked claims procedures because Section 502(a)(1)(B) provides an avenue for such claims). The Court looks to the underlying alleged injury to determine whether a claim under Section 502(a)(3) is "duplicative of a claim that could have been brought under ERISA § 502(a)(1)(B)." *Id.* (citing *Innova Hosp. San*

21

*Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga.*, 892 F.3d 719, 733–34 (5th Cir. 2018)).

Here, Mrs. Wegner's Section 502(a)(3) claim seeks the same relief as her Section 502(a)(1)(B) claim: additional benefits. (Dkt. #43 at 13). Therefore, Mrs. Wegner may not proceed with a claim under Section 502(a)(3). The fact that she did not prevail on her Section 502(a)(1)(B) claim does not render this alternative claim viable. *Tolson v. Avondale Indus.*, 141 F.3d 604, 610 (5th Cir. 1998).

## F. Wegner's Request for Attorney's Fees

Mrs. Wegner also asserts that she is entitled to attorney's fees and costs under ERISA Section 502(g)(1), which provides that a court "in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). A claimant must show "some degree of success on the merits" before a court can award fees under this provision. *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010) (quotation omitted). Because the Court has concluded that each of Mrs. Wegner's claims is without merit, she is not entitled to attorney's fees.[8]

---

[8] In her reply brief to Hartford, Mrs. Wegner for the first time asserted that the doctrine of equitable estoppel applies in this case in that Hartford "made numerous representations that Troy Wegner was approved for [the] supplemental life insurance he selected by accepting premiums he [paid]" and that Troy Wegner "relied on these representations to his detriment." (Dkt. #49 at 1–2). An ERISA-estoppel claim requires that the plaintiff establish: "(1) a material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances." *Clark v. CertainTeed Salaried Pension Plan*, 860 F.App'x 337, 340 (5th Cir. 2021) (quotation omitted). Mrs. Wegner has not established any of the three elements. To the extent she has asserted an estoppel claim, it is dismissed.

### IV. CONCLUSION

Patricia Wegner's claims do not entitle her to any relief under ERISA. It is therefore **ORDERED** that Hartford and Tetra Pak's requests for judgment under Rule 52(a) is **GRANTED**, and all of Patricia Wegner's claims against Hartford and Tetra Pak are hereby **DISMISSED with prejudice**. The Court will enter a final judgment by separate order.

**So ORDERED and SIGNED this 30th day of November, 2022.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE